UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAUL ALONSO MADRIGAL,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br>Defendant. | No. 2:25-cv-02450-DAD-EFB (SS)<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income under Title XVI of the Social Security Act. ECF No. 1. Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 11, 13.[1] For the reasons provided below, the undersigned recommends that plaintiff's motion be denied and defendant's be granted.

**I. Background**

On November 8, 2022, plaintiff filed an application for disability insurance benefits under Title XVI of the Social Security Act, alleging disability beginning on September 20, 2022. Administrative Record (AR) 138, 171, 179, 228.[2] Plaintiff alleged disability due to spina bifida,

[1] The parties have not consented to the jurisdiction of a United States Magistrate Judge in this action. *See* ECF Nos. 7, 15.

[2] Defendant lodged the administrative record on December 10, 2025. ECF No. 10.

hydrocephalus, shunt implantation, mobility impairments, and urinary and intestinal conditions. AR 175. Plaintiff's application was denied on January 6, 2023, AR 62-65, and his request for reconsideration was denied on October 6, 2023. AR 68. He requested a hearing before an Administrative Law Judge (ALJ), which was held by video on May 28, 2024. AR 11. On June 20, 2024, the ALJ issued a decision finding plaintiff not disabled. AR 11-18. Plaintiff sought review to the Appeals Council, which denied review on July 1, 2025, AR 1-6, and, on August 27, 2025, plaintiff initiated the instant action. ECF No. 1.

## II. Legal Standard

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). At each of these five steps, "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In steps one through four, the burden of proof is on the claimant. *Ford*, 950 F.3d at 1148. A claimant establishes a prima facie case of qualifying disability once he has carried the burden of proof from step one through step four. *Ibid*.

Before making the step four determination, the ALJ first must determine the claimant's RFC. *Batson*, 359 F.3d at 1194; *see* 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1). A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g); *Batson*, 359 F.3d at 1194. If the claimant can perform other work in the national economy, then the claimant may not be found to be disabled. *Ibid.*

////

////

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart (Thomas)*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co. (CalPortland)*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless, *Stout*, 454 F.3d at 1055-56, and the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

In conducting its analysis, the "reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may not affirm the ALJ on a ground upon which she did not rely; rather, the court may review only the reasons stated by the ALJ in her decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Further, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

### III. The ALJ's Findings of Fact and Conclusions of Law

In his June 20, 2024 decision, the ALJ found plaintiff not disabled and made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since September 20, 2022, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: neurogenic bladder and bowel secondary to myelomeningocele (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) but he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can never climb ladders, ropes, or scaffolds. He can never balance (as defined by the Selected Characteristics of Occupations). He is limited to only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. In addition, he can never be exposed to environmental hazards, such as high exposed places, moving mechanical parts, or open bodies of water.
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on August 12, 2004 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work (See 20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2022, the date the application was filed.

AR 13-18.

**IV. Analysis**

Plaintiff raises two issues on review. First, plaintiff asserts that the ALJ erred in failing to provide clear, convincing, and well-supported reasons for discounting his descriptions of his own symptoms and limitations, when determining plaintiff's RFC. ECF No. 11 at 5-10. Second, plaintiff argues that the ALJ erred in concluding, at step five in finding that there existed jobs in significant numbers in the national economy that plaintiff could perform in light of his RFC. ECF No. 11 at 10-14. The court concludes that plaintiff has not demonstrated that reversal is merited and recommends plaintiff's motion be denied and defendant's be granted.

**A. Claim One: Error In RFC Determination**

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ, without specific, clear, and convincing reasons, discounted plaintiff's testimony describing the severity and extent of his mobility impairments and impairments stemming from urinary dysfunction. ECF No. 11 at 5-10. Specifically, plaintiff argues that the ALJ was unreasonable in rejecting plaintiff's testimony that he had difficulty walking for more than 20 minutes at a time and that he required frequent unscheduled breaks to clean and change his urinary catheter. *Id*. at 5-6. Plaintiff further argues that the RFC lacked substantial evidence supporting it insofar as the ALJ found that plaintiff could "drive, or sit, stand, and walk on a sustained bases" during a work day. *Id*. at 7-8. Upon review of the record, the court concludes the ALJ's determination was supported by substantial evidence. *See Biestek*, 587 U.S. at 99.

**1. Partial Rejection of Plaintiff's Testimony**

When determining a plaintiff's residual functioning capacity, the ALJ must consider the plaintiff's testimony describing his symptoms and engage in a two-step inquiry to determine whether such testimony is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006). This standard is met where the ALJ "specifically identify[ies] the testimony [from a claimant] she or he finds not to be credible and . . . explain[s] what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). It is not sufficient for an ALJ to merely recite boilerplate or provide a general summary of the evidence; nonetheless, the ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id.* at 1277.

**a. Mobility Impairment**

Plaintiff first argues that the ALJ improperly rejected plaintiff's testimony that he had "difficulty with walking for more than 20 minutes at a time." ECF No. 11 at 5. Plaintiff fails to show error on this basis. In making this argument, plaintiff relies on a portion of his testimony on which he had testified that the braces on his feet that he wore at the time of testifying caused him pain after he "started going on . . . twenty-minute walks" approximately three weeks prior, and that he intended to obtain new braces that were not as constricting on the bottom. AR 29-31. The record before the ALJ also contained a Disability Report from November 2022 in which plaintiff reported that he used braces to walk and "g[ot] tired from walking," AR 175; and a Disability Report from February 2023 in which plaintiff reported requiring braces to walk. AR 184. The record additionally contained plaintiff's December 2023 Disability Report in which he reported having needed a wheelchair due to blisters and pressure on his feet caused by his work at Walmart. AR 200. Despite this evidence, the RFC did not include a condition that plaintiff could only walk for twenty-minute intervals; plaintiff argues that, to the extent this reflects a rejection

of his testimony, the ALJ failed to provide clear, convincing, and well-supported reasons for that rejection, as required by law. ECF No. 11 at 5-6 (citing AR 30-32, 175, 179, 184, 200, 228-31).

Plaintiff has not shown that the ALJ's RFC determination was error in this regard. To the extent that plaintiff's testimony could be understood to assert that he had difficulty walking for more than twenty-minute intervals, the ALJ's partial rejection of this testimony was supported by specific, clear, and convincing reasons. *See Garrison*, 759 F.3d at 1014-15. The reasons provided by the ALJ were specific, as they contain enough detail "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony," *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002), and because the "reviewing court [is] not . . . forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell,* 947 F.2d at 345-46; *see, e.g., Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996), *superseded by statute on other grounds*. In explaining why he did not fully credit plaintiff's description of the intensity, persistence, and limiting effect of the impairments of his lower extremities, the ALJ detailed the medical evidence in the record tending to contradict plaintiff's testimony, including clinicians' contemporaneous treatment notes documenting plaintiff's lower extremity functioning. AR 15-16 (citing AR 340-45, 361, 363, 463-70). The ALJ also discussed plaintiff's hearing testimony describing his contemporaneous functioning,—in which plaintiff testified, inter alia, that he believed he could walk for longer than twenty minutes at a time, *see* AR 33—and the functioning he experienced while working at Walmart; his prior self-reporting about the pain and impairments he experienced at his Walmart job; and his treating physician's recommendations concerning his capacities to use his foot pedals to drive. AR 15-16 (citing AR 200). Taken together, these findings satisfy the requirement that the ALJ explain "specific[ly]" why he rejected in part plaintiff's testimony, *see Garrison*, 759 F.3d at 1014-15, so as to enable the court to effectuate a meaningful review of the ALJ's disability determination and underlying findings. *See Bunnell,* 947 F.2d at 345-46; *see, e.g.*, *Lester*, 81 F.3d at 834 (holding ALJ's reasons for rejecting claimant's testimony not sufficiently specific the ALJ had simply made a "general statement that the claimant's testimony was unbelievable" but "did not provide any specific reasons for her disbelief other than a lack of objective evidence");

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (holding that ALJ was not sufficiently specific in partially rejecting claimant's allegations of symptoms where ALJ simply "repeated that there was little or nothing in the record to support" the allegations); *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 584 (9th Cir.), *on reh'g,* 859 F.2d 1396 (9th Cir. 1988) (same, where ALJ simply stated in one sentence that plaintiff's allegations of her symptoms were unsupported by the objective medical evidence).

The reasons provided by the ALJ for partially discounting plaintiff's testimony were also adequately clear and convincing. The ALJ did not, as plaintiff claims, simply recite boilerplate or summarize the evidence without explaining its relationship to the ALJ's evaluation of plaintiff's credibility. *See* ECF No. 11 at 5-6. Rather, the ALJ credited that plaintiff possessed "lower extremity problems" including "muscle atrophy, low muscle tone, reduced strength, and decreased reflexes in his lower extremities as well as abnormal gait," and credited that these impairments had caused him difficulties in standing and walking. AR 15-16. The ALJ observed that, nonetheless, evidence in the record, including plaintiff's hearing testimony, indicated that plaintiff could sit, ambulate to some extent, and drive a car. AR 16. The totality of the evidence, the ALJ concluded, supported a finding that plaintiff could perform mostly sedentary work with "some postural and environmental limitations." *Id*.

This reasoning was sufficiently clear and convincing to support the ALJ's partial rejection of plaintiff's testimony. The ALJ described accurately the evidence in the record on which he relied, *see* AR 340-45, 361, 363, 463-70, and did not cherry-pick or minimize the medical evidence concerning plaintiff's impairments in his lower extremities and limitations from same. *See generally* AR 15-16. Rather, the ALJ specifically noted portions of the medical evidence, including contemporaneous clinician reports and plaintiff's reports of his own functioning, that supported the conclusion that plaintiff was not limited to ambulation in twenty-minute intervals. In cases with comparable facts, courts have found the ALJ's reasoning to be legally adequate. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (holding ALJ was reasonable in relying on objective medical evidence of claimant's functioning over claimant's subjective testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

(holding ALJ reasonably relied on physician's assessment of claimant's lifting capability in lieu of claimant's self-report, as "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of claimant's allegations of disabling pain, as they conflicted with records from her physical examinations). Plaintiff fails to show error on this basis.

**b. Use of Urinary Catheter**

Plaintiff also argues that the ALJ erred in rejecting plaintiff's testimony insofar as plaintiff testified that he "need[ed] numerous unscheduled breaks to clean and change his catheter." ECF No. 11 at 5. Plaintiff also fails to show error on this ground. In his February 2023 application for benefits, plaintiff represented that he needed to use a urinary catheter five times a day, AR 184, and described a similar frequency in his hearing testimony. AR 32. In his hearing testimony, he also described that he was often fearful of urinary incontinence and had experienced instances, while working at Walmart, during which he almost experienced incontinence. In the RFC, however, the ALJ did not include a limitation that plaintiff required greater-than-frequent restroom breaks to tend to his catheter. AR 14.

To the extent the RFC reflects a partial rejection of plaintiff's testimony on this point, the ALJ's reasons were sufficiently specific, clear, and convincing. The ALJ detailed that plaintiff's medical records, including his contemporaneous course of treatment, indicated that he had excellent bladder control, with no documented periods of incontinence during the adjudicatory period. AR 15 (citing 333-39, 346-55, 476-500). The ALJ also relied on plaintiff's hearing testimony, in which he described his current management of his condition; his history of urinary incontinence or lack thereof; and his process for tending to his catheter, which plaintiff described as requiring less than two minutes to complete in each instance. *Id*. These reasons were not, as plaintiff asserts, boilerplate, but rather were sufficiently specific "to permit the court to conclude that the ALJ did not arbitrarily discredit [plaintiff]'s testimony." *Thomas*, 278 F.3d at 958 *see also Bunnell,* 947 F.2d at 345-46; *Lester*, 81 F.3d at 834.

////

The ALJ's reasoning was also sufficiently clear and convincing. It was appropriate for the ALJ to consider plaintiff's claimed limitation in light of the records of his functioning that had been clinically documented, and was particularly appropriate for the ALJ to consider plaintiff's course of treatment in assessing his claims of debilitating impairment. *See Smartt v. Kijakazi*, 53 F.4th 489, 497-500 (9th Cir. 2022). Here, the ALJ noted plaintiff's claims of the limitations engendered by his urinary catheter, care for same, and urinary incontinence, but also observed that plaintiff's treatment providers found his bladder functioning to be excellent with no reported instances of incontinence during the relevant period. AR 15. The ALJ also noted that plaintiff's claimed limitations were unsupported by plaintiff's own testimony describing his management of his urinary incontinence concerns and the minimal demands for his catheter care during a workday. AR 15. These reasons were sufficiently clear and convincing to justify the ALJ's partial rejection of plaintiff's testimony on this point. *See, e.g.*, *Smartt*, 53 F.4th at 497-500; *Carmickle*, 533 F.3d at 1161; *Osenbrock*, 240 F.3d at 1165-66. Plaintiff fails to show that the RFC was flawed on this basis.

**2. Additional Errors in the RFC Determination**

Plaintiff additionally claims error in the ALJ's failure to include in the RFC the limitations that plaintiff would "need . . . extra breaks or to alternately stand and stretch" during a six-hour period; that plaintiff could not walk two hours or more during an eight-hour period; and plaintiff could not drive. ECF No. 11 at 7-9. Plaintiff's argument is that these limitations are supported by the medical and other evidence in the record, even if they are entirely or partially contradicted by plaintiff's hearing testimony. *Id.*

Plaintiff fails to show that the ALJ's decision is unsupported by substantial evidence on this basis. *See Biestek*, 587 U.S. at 99. To demonstrate error meriting reversal of the agency's decision, plaintiff must show that the decision does not rest on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Further, if the evidence in the record "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, substantial evidence

supports the ALJ's RFC determination relative to the limitations plaintiff now urges. As discussed *ante*, the ALJ credited that plaintiff had ambulatory difficulties and found that his functioning was consistent with the demands of a sedentary job, based, specifically, on plaintiff's recent reports to clinicians, medical assessments of plaintiff's lower extremity functioning, his treatments and reported effectiveness of same, and plaintiff's hearing testimony describing the precise nature and scope of activities in which he had engaged and believed he could engage. AR 15-16. The ALJ's description of the record in this regard was neither inaccurate nor misleading, and the ALJ's ultimate conclusion of plaintiff's RFC reflects a reasonable interpretation of the totality of the evidence before the him, in light of the specific requirements of sedentary job roles. *See* AR 15-16. Plaintiff has not shown that the ALJ's decision lacked substantial evidence in this regard. *See, e.g.*, *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

**B. Claim Two: Error at Step Five**

In his second claim, plaintiff argues that the ALJ erred in finding, at step five, that jobs existed in significant numbers in the national economy, which plaintiff could perform given his RFC. ECF No. 11 at 10-14. Specifically, plaintiff argues that the ALJ did not have sufficient evidence to credit the vocational expert's testimony estimating the number of jobs available in the national economy for surveillance system monitors or document preparers. ECF No. 11 at 11-13. Plaintiff also argues that the ALJ lacked evidence in the record to find that the job of election clerk reflected substantial gainful work, as such a position is sporadic by its definition. *Id*. at 13-14.

**1. Surveillance System Monitor and Document Preparer**

At step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations. *Stout*, 454 F.3d at 1052; 20 C.F.R. § 404.1560(c)(2). In making this finding, the Commissioner may rely on testimony from a vocational expert on the number of jobs available in the national economy that the claimant is able to perform. *See generally Biestek*, 587 U.S. 97.

////

Plaintiff argues that the ALJ's findings concerning the availability of surveillance system monitor and document preparer jobs, relative to the step five determination, were defective for failing to comply with the heightened evidentiary and articulation requirements for these occupations, as set forth in the Social Security Administration's Emergency Message 24027, Revised. ECF No. 11 at 11-13. Under Emergency Message 24027, Revised, an ALJ may not rely on the Dictionary of Occupational Titles data to support a step-five finding for the listed occupations without obtaining additional evidence from the vocational expert that, as currently performed: (1) the occupation's "requirements are consistent with the individual's RFC," and (2) the occupation "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." Social Security Administration, Emergency Message, https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (accessed Aug. 27, 2026). The Emergency Message also requires that the ALJ include or summarize the vocational expert's evidence that supports the conclusion. *Id.*

The parties do not dispute that the ALJ's findings as to the surveillance system monitor and document preparer jobs were subject to EM-24027-Rev., as they are among the thirteen occupations listed in the emergency message, effective prior to plaintiff's final agency decision. *See* AR 18 (listing DOT codes for each); *see* ECF Nos. 11, 13 Plaintiff argues that the ALJ failed to comply with the requirements of EM-24027-Rev because the vocational expert did not provide sufficient "additional evidence" as required. ECF No. 11 at 11-13. This argument is unpersuasive. In her testimony, the vocational expert recognized that the occupation descriptions contained in the DOT for the surveillance system monitor and document preparer occupations were outdated, but testified that she had additionally performed independent labor market research that confirmed that the job data estimates for both positions remained accurate, although their duties had shifted largely to digital forms. AR 39-40. In relying on this evidence at step five, the ALJ accurately summarized the vocational expert's testimony and, based on her explanations, found credible the job numbers estimates to which she had testified. AR 18. This suffices to meet the modest evidentiary and articulation requirements of EM-24027, Revised, as numerous courts have concluded on similar records. *See, e.g.*, *Laura W., v. Bisignano*, No. 25-

CV-50432, 2026 WL 2474803, at *2-3 (N.D. Ill. Aug. 24, 2026); *Jared T. v. Bisignano*, No. 25-CV-1343, 2026 WL 2099142, at *7-8 (E.D. Wis. July 21, 2026); *Boscaljon v. Comm'r of Soc. Sec.,* No. 3:25-CV-01541-JRK, 2026 WL 1842604, at *5 (N.D. Ohio June 26, 2026); *Elizabeth M. v. Bisignano*, No. 25-cv-2550 (DJF), 2026 WL 686783, at *4-5 (D. Minn. Mar. 11, 2026); *see also McGinty v. Bisignano*, No. 1:25-CV-1965, 2026 WL 1413553, at *8 (M.D. Pa. May 20, 2026); *Rose v. Bisignano*, No. 7:24-cv-1141-KS, 2026 WL 540781, at *3 (E.D.N.C. Feb. 26, 2026); *Tester-Kopec v. Comm'r of Soc. Sec.*, No. 1:25-cv-00001, 2025 WL 3628110, at *9-10 (N.D. Ohio Dec. 15, 2025). Plaintiff fails to demonstrate that the ALJ's step five determination reflected legal error on this basis.

**2. Election Clerk**

Finally, plaintiff argues that the ALJ erred in relying on job availability data concerning election clerks at step five. The undersigned agrees but finds the error harmless.

The regulations require that, at step five, the Commissioner evaluate the claimant's ability to perform "work activity on a regular and continuing basis." 20 C.F.R. § 416.945(b). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. The DOT describes the duties of an election clerk, however, not as occurring on a "regular and continuing" basis, but rather as solely occurring "during elections." DICOT 205.367-030, 1991 WL 671719. For this reason, there existed a conflict between the VE's testimony, which identified "election clerk" as a job plaintiff could perform on a regular and continuing basis, and the DOT's description of an election clerk's duties. Defendant argues that, notwithstanding the textual definition of the election clerk position, it is reasonable to assume that some of the job duties could be perform year-round. ECF No. 13 at 9-10. While this is plausible, there was nothing in the record to suggest this to be true and, when faced with the apparent discrepancy, the ALJ was required to elicit additional testimony from the VE to establish this point, or otherwise to resolve the discrepancy. *See, e.g., Van Zuidam v. Kijakazi*, No. 20-CV-61511, 2022 WL 1664023, at *9-10 (S.D. Fla. Mar. 7, 2022); *Arguello v. Berryhill*, No. CV 18-4592 SS, 2019 WL 121192, at *4 (C.D. Cal. Jan. 7, 2019) (finding an apparent conflict between the DOT's description of an election clerk and the VE's testimony that the claimant can perform

"regular and continuing" work); *De Perez v. Comm'r of Soc. Sec.*, No. 17 CV 0404, 2018 WL 3473967, at *7 (E.D. Cal. July 18, 2018) (same); *Hill v. Colvin*, 807 F.3d 862, 872 (7th Cir. 2015) (Posner, J., concurring) ("Obviously [the election clerk position] is occasional rather than full-time employment, because elections are not held continuously."); *Burney v. Berryhill*, 276 F. Supp. 3d 496, 500-01 (E.D.N.C. 2017) (finding the ALJ's decision not supported by substantial evidence in part because "the job of election clerk is only available during elections"). Here, the ALJ did not resolve or even address this apparent discrepancy when rendering his decision at step five, and the VE provided no testimony whatsoever on this point. *See* AR 17-18, 38-40. This omission by the ALJ was error. *See Van Zuidam v. Kijakazi*, 2022 WL 1664023, at *9-10; *Arguello*, 2019 WL 121192, at *4; *De Perez*, 2018 WL 3473967, at *7.

The record demonstrates, however, that this error was harmless. *See Burch*, 400 F.3d at 679 (holding reversal and remand not merited for harmless error). The regulations provide that a claimant is not disabled if there are jobs available "in significant numbers either in the region where [plaintiff] lives or in several regions of the country" that the claimant may perform given his RFC. 42 U.S.C.A. § 423(d)(2)(A). Here, the VE testified that there were approximately 13,900 document preparer jobs nationally; 5,900 election clerk jobs; and 16,900 surveillance system monitor jobs, that plaintiff could perform given the RFC. AR 39. Thus, even if the ALJ had not considered the election clerk estimates, the record still supported a finding that there were multiple occupations that, in aggregate, had approximately 30,800 jobs in the national economy that plaintiff could perform. This meets or exceeds the total number of available jobs that the Court of Appeals and other courts have held to be "significant" within the meaning of the regulations. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (holding 25,000 jobs in national economy was a significant number); *Aguilar v. Colvin*, No. 5:15-CV-02081-GJS, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016) (finding 11,850 national jobs and 1,080 regional jobs significant; observing trend in the Central District of California to find job numbers over 10,000 nationally and 1,000 locally to be sufficient); *Connolly v. Colvin*, No. 1:15-cv-718-BAM, 2016 WL 8730722, at *6 (E.D. Cal. Sept. 16, 2016) (finding 19,000 national jobs and 1,900 regional jobs significant). Therefore, the ALJ's error at step five was harmless, and the

determination that plaintiff is not disabled is, ultimately, supported by substantial evidence such that reversal of the agency decision is not merited. *See Burch*, 400 F.3d at 679.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) be denied;
2. Defendant's cross-motion for summary judgment (ECF No. 13) be granted;
3. The Clerk of Court be directed to enter judgment in favor of defendant and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 2, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE